# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOSEPH FARAH, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 11-cv-1179 (RMC) |
| | ) |
| ESQUIRE MAGAZINE, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## MEMORANDUM OPINION

Barack H. Obama, President of the United States, first encountered questions about his birthplace when he was running in the Democratic Party primaries for the presidential nomination. Since then, the President has released two birth certificate forms from the State of Hawaii attesting to his birth in that State. There remain groups of people, nicknamed "birthers," who continue to question the President's place of birth and therefore legitimacy as President.[1]

One such group is headed by Plaintiffs: WorldNetDaily.com; its wholly-owned subsidiary, WND Books; Joseph Farah, editor and chief executive officer; and Jerome Corsi, author of "Where's the Birth Certificate? The Case That Barack Obama Is Not Eligible To Be President" (the "Corsi Book").[2] Plaintiffs complain that Defendants are responsible for the Internet publication of an article on May 18, 2011, which contained false and misleading facts

---

[1] One must be a natural born U.S. citizen to run for President. *See* U.S. Const. art. II, § 1, cl. 4 ("No person except a natural born citizen . . . shall be eligible to the Office of President . . . .")

[2] The Corsi Book was published by WND Books.

about the them and the book, resulting in injury.  Defendants are Hearst Communications, Inc. and Mark Warren;[3] they move to dismiss, asserting that their Internet posting was a satirical swipe at Plaintiffs, well within the bounds of the First Amendment and thus not actionable.  The motion will be granted.

## I. FACTS

President Obama was born on August 4, 1961, in Honolulu, Hawaii, to Ann Dunham, from Wichita, Kansas, and Barack Obama, Sr., from Kenya.  The senior Mr. Obama was attending the University of Hawaii at the time.  The couple was divorced in 1964 and, in 1967 when Ann Obama married Lolo Soetoro, the family moved to Jakarta, Indonesia.  The junior Mr. Obama returned to the United States when he was ten years old and thereafter lived with his maternal grandparents in Honolulu.

Years later, the State of Illinois elected Mr. Obama to the United States Senate. While serving as a Senator in 2007-08, he entered the Democratic Party primaries for the presidential nomination.  During that primary campaign, questions were raised about his birthplace and whether he is a natural-born American and thus eligible to be president.  Then-Senator Obama obtained from Hawaii a "short-form" birth certificate of the kind the State provides to all of its residents and released it to the public.  The short-form certificate did not totally quell the controversy.  After his election to the presidency, President Obama obtained a "long-form" birth certificate from Hawaii.  On April 27, 2011, he posted it on the White House website.  *See* Defs.' Mem. in Suppt. of Mot. to Dismiss [Dkt. 4], Ex. A ("Findikyan Decl."), Ex.

---

[3] Esquire Magazine, Inc., is also named as a defendant in this case, but it is not a legal entity and it has not been served.  Accordingly, it is dismissed as a defendant in this case.

9 (The White House post Apr. 27, 2011). Three weeks later, Plaintiffs published the Corsi Book questioning the President's birthplace.

The controversy surrounding President Obama's birth gave rise to the so-called "Birther Movement," a loose knit group of people who did or do question whether he is a natural-born American and eligible to be president. Plaintiffs have figured prominently among those who raised questions, such as on June 10, 2008, when they posted a story on WND.com titled, "Is Obama's Candidacy Even Constitutional? Secrecy over Birth Certificate, Demand for 'Natural-born' Citizenship Cited." Findikyan Decl., Ex. 8 (WND.com post June 10, 2008); *see also* Compl. ¶ 8 ("Plaintiffs . . . have at all material times covered the controversy concerning whether or not President Barack Hussein Obama is a natural-born American citizen eligible to be President of the United States.").

Mr. Farah is the founder, editor and chief executive officer of WorldNetDaily.com, self-described as the "first independent online news service in the world." *Id*., Ex. 6 (WND.com post Aug. 24, 2011).[4] WorldNetDaily.com publishes a website, WND.com. Mr. Farah is also the founder and chief executive officer of WND Books, a publishing company. *Id.* He writes a daily column published on WND.com and a weekly syndicated newspaper column for Creators News Service. *Id.* Dr. Jerome Corsi has a PhD in Political Science; "he is currently a Senior Staff Reporter for World Net Daily, where he works as an investigative reporter." *Id.*, Ex. 46 (www.jeromecorsi.com, About Corsi, (last visited on May 30, 2012)). In addition to authoring the Corsi Book, Dr. Corsi co-authored "Unfit for

---

[4] MSNBC.com has described WND as "a conspiracy-mongering website with its own publishing arm . . . ." Findikyan Decl., Ex. 7 (MSNBC.com post Apr. 27, 2011).

Command – Swift Boat Veterans Speak Out Against John Kerry." *Id.*

From June to December 2008, WND posted more than 60 Internet items on the issue of the President's birth certificate. In the period between January 2009 through January 2010, WND posted approximately 280 entries on its website that in some form questioned the legitimacy of the President's short-form birth certificate. From February 2010 to March 2011, WND posted another approximately 266 articles on the same issue. Beginning in April 2011, WND began a major publicity campaign for the upcoming Corsi Book. On or about April 20, 2011, Mr. Farah and WorldNetDaily.com were featured on the Drudge Report, which allegedly had the effect of causing the soon-to-be-released Corsi Book to "rocket" to the number one position on Amazon. *Id.*, Ex. 19 (WND.com post Aug. 4, 2011).

The White House posted the long-form version of the President's birth certificate on April 27, 2011. *Id.*, Ex. 9 (The White House post Apr. 27, 2011). Plaintiffs were not convinced. Mr. Farah went on national television to defend the position of the Birther Movement. *Id.,* Ex. 21 (WND.com post Apr. 27, 2011). Two days later, Mr. Farah posted on WND's website a piece entitled, "It's settled! He's ineligible." *Id.*, Ex. 22 (WND.com post Apr. 29, 2011). The posting claimed an "Exclusive: Joseph Farah notes birth certificate of Obama proves opposite of what media think" and that he "for the first time, can report with confidence that there is no way on earth Obama is eligible to be sitting in the White House." *Id.* Despite the release of the long-form birth certificate, Mr. Farah confirmed to the media that he had "no intention of standing down." *Id.,* Ex. 7 (MSNBC.com post Apr. 27, 2011).

In the three weeks after release of the President's long-form birth certificate, WND posted approximately 47 articles questioning its validity and supporting the upcoming

Corsi Book, including:

- "'Obama blinked. Now game begins.' Author suggests disputed presidency won't survive publication of book," *id.*, Ex. 23 (WND.com post Apr. 27, 2011);

- "Guess what prompted Obama to release birth certificate! Request to Hawaii came day after Corsi book hit No. 1," *id.*, Ex. 24 (WND.com post Apr. 29, 2011); and

- "Farah: It's not a valid birth certificate. Listen as WND editor explains how Obama not qualified to be prez." *Id.* Ex. 25 (WND.com post May 9, 2011).

The Corsi Book was published on May 17, 2011, and was announced on WND's website with an article titled, "It's out! The book that proves Obama's ineligible. Today's the day Corsi is unleashed to tell all about that 'birth certificate.'" *Id.*, Ex. 26 (WND.com post May 17, 2011).

On the day after publication of the Corsi Book, esquire.com published a piece by Defendant Mark Warren in "The Politics Blog" section of its website headlined, "BREAKING: Jerome Corsi's Birther Book Pulled From Shelves!" *Id.*, Ex. 27 (esquire.com Politics Blog post May 18, 2011 at 10:50 a.m.) (the "Blog Post").[5] Next to a photo of the Corsi Book's cover, the Blog Post read in its entirety:

> **In a stunning development** one day after the release of *Where's the Birth Certificate? The Case that Barack Obama is not Eligible to be President*, by Dr. Jerome Corsi, World Net Daily Editor and Chief Executive Officer Joseph Farah has announced plans to recall and pulp the entire 200,000 first printing run of the book, as well as announcing an order to refund the purchase price to anyone who has already bought either a hard copy or electronic download of the book.
>
> In an exclusive interview, a reflective Farah, who wrote the book's forward and also published Corsi's earlier best-selling work, *Unfit for*

---

[5] The Blog Post was only posted on the Internet; it was never published in Esquire magazine. The Politics Blog expressly indicated that it was an opinion page. Findikyan Decl., Ex. 27 (the Blog Post) ("About this Blog: At last, some sanity, authority, and fairly balanced opinion arrive in the blogosphere."). It was tagged as "humor." *Id.* (Tags).

*Command: Swift Boat Veterans Speak out Against John Kerry* and *Capricorn One: NASA, JFK, and the Great "Moon Landing" Cover-Up*, said that after much serious reflection, he could not go forward with the project. "I believe with all my heart that Barack Obama is destroying this country, and I will continue to stand against his administration at every turn, but in light of recent events, this book has become problematic, and contains what I now believe to be factual inaccuracies," he said this morning. "I cannot in good conscience publish it and expect anyone to believe it."

When asked if he had any plans to publish a corrected version of the book, he said cryptically, "There is no book." Farah declined to comment on his discussions of the matter with Corsi.

A source at WND, who requested that his name be withheld, said that Farah was "rip-shit" when, on April 27, President Obama took the extraordinary step of personally releasing his "long-form" birth certificate, thus resolving the matter of Obama's legitimacy for "anybody with a brain."

"He called up Corsi and really tore him a new one," says the source. "I mean, we'll do anything to hurt Obama, and erase his memory, but we don't want to look like f___ing idiots, you know? Look, at the end of the day, bullshit is bullshit."

Corsi, who graduated from Harvard and is a professional journalist, could not be reached for comment.

*Id.* (boldface and italics in original). One and one-half hours later, Esquire added an update to the Blog Post:

**UPDATE, 12:25 p.m.,** *for those who didn't figure it out yet, and the many on Twitter for whom it took a while*: We committed satire this morning to point out the problems with selling and marketing a book that has had its core premise and reason to exist gutted by the news cycle, several weeks in advance of publication. Are its author and publisher chastened? Well, no. They double down, and accuse the President of the United States of perpetrating a fraud on the world by having released a forged birth certificate. Not because this claim is in any way based on reality, but to hold their terribly gullible audience captive to their lies, and to sell books. This is despicable, and deserves only ridicule. That's why we committed satire in the matter of the Corsi book. Hell, even the

-6-

president has a sense of humor about it all.  Some more serious reporting from us on this whole "birther" phenomenon <u>here</u>, <u>here</u>, and <u>here</u>.

*Id.* (boldface and italics in original).

About an hour later when contacted about the Blog Post by the *Daily Caller*, Mark Warren opined that Dr. Corsi is "an execrable piece of shit."  *Id.,* Ex. 28 (dailycaller.com post May 18, 2011 at 12:06 p.m.)  ("The Esquire story, written by Mark Warren, spread across the Internet moments after being posted on the magazine's website Wednesday morning.  Esquire has said it was a joke and Warren told [the *Daily Caller*] he has no regrets about posting it.").  At the same time, the *Daily Caller* also contacted Mr. Farah, who said that he had never spoken to anyone from Esquire and "[n]ever uttered these words or anything remotely resembling them to anyone.  It is a complete fabrication.  The book is selling briskly.  I am 100 percent behind it." *Id.*  Mr. Farah also told the *Daily Caller* that he was considering "legal options" but he "assume[d] it [was] a very poorly executed parody."[6]  *Id.*

That evening, at 9:24 p.m., WND posted its own story:  "Farah:  Major media fooled, legal options considered 'You think I'm gonna pull a best-selling book off the shelves?'" *Id.*, Ex. 43 (WND.com post May 18, 2011 at 9:24 p.m.).  WND included a transcript of Mr. Farah's interview on WOR News Talk Radio 710 HD – The Steve Malzberg Show:

> I got calls from all the top editors at all of the big news agencies across this country today all asking the same question you know for a comment on this development, and I'm goin like "Wha – are you guys serious? You know – You think I'm gonna pull a best-selling book off the shelves?  (laughing) What's the matter with you?"

_____

[6] Esquire.com, like Esquire magazine, has a history of satire and humor regarding national issues and public figures.  *See, e.g.*, Findikyan Decl., Ex. 36 (esquire.com post May 19, 2010, "Exclusive: Bernie Kerik's Prison To-Do List Leaked!"); *id*., Ex. 38 (esquire.com post May 9, 2011, "Bin Laden Home-Video Leak Continues with Osama's DVR").

*Id.* Twenty-four hours later, at 9:25 p.m. on May 19, 2011, WND.com posted a story headlined, "Farah vows to sue Esquire, 'take ownership' WND editor says he will aggressively pursue lawsuit for 'libelous smear.'" *Id.* Ex. 44 (WND.com post May 19, 2011).

Plaintiffs announced their lawsuit at a press conference on June 28, 2011. They seek more than $100 million in actual and compensatory damages and more than $20 million in punitive damages. The Complaint alleges defamation (Count I), false light invasion of privacy (Count II), tortious interference with business relations (Count III), violations under the Lanham Act, 15 U.S.C. § 1125(a)(1) (Count IV), and misappropriation invasion of privacy (Count V). Defendants move to dismiss.[7]

## II. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at

---

[7] Pursuant to D.C. Code § 16-5503(c)(1), the Court granted Defendants' motion to stay discovery pending a decision on their motion to dismiss. *See* Minute Order filed Jan. 30, 2012.

555. But a court need not accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 560 U.S. 662, 678 (2009). In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

Federal Rule of Evidence 201 provides that a court may judicially notice a fact that is not subject to "reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may take judicial notice at any stage in a case. Fed. R. Evid. 201(d). Specifically, a court may take judicial notice of historical, political, or statistical facts, or any other facts that are verifiable with certainty. *Mintz v. FDIC*, 729 F. Supp. 2d 276, 278 n.2 (D.D.C. 2010). The matter to be noticed must be relevant. *See Whiting v. AARP*, 637 F.3d 355, 364 (D.C. Cir. 2011). In moving to dismiss, Defendants presented various Internet postings. The Court takes judicial notice of those items. Defendants rely on these documents not for their truth, but merely to show that those statements were made. The fact that these Internet postings were made and their written content is not disputed in this case.

### III. ANALYSIS

Plaintiffs' federal law claim under the Lanham Act must be dismissed because the Lanham Act only applies to commercial speech, not to satirical non-commercial speech.[8]

---

[8] The Court has federal question jurisdiction over Plaintiffs' Lanham Act claim, *see* 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' common law claims. *See* 28 U.S.C. § 1367.

Further, Plaintiffs' common law claims must be dismissed because they are barred by the D.C. Anti-SLAPP Act, which protects speech relating to issues of public interest such as qualifications for public office, and due to failure to state a claim. Satire[9] such as the Blog Post is protected speech under the First Amendment.

## A. D.C. Anti-SLAPP Act

The D.C. Anti-SLAPP ("strategic lawsuits against public participation") Act, D.C. Code § 16-5501 *et seq.*, was adopted in 2010. The Act "incorporates substantive rights with regard to a defendant's ability to fend off lawsuits filed by one side of a political or public policy debate aimed to punish the opponent or prevent the expression of opposing points of view." *Sherrod v. Breitbart*, Civil No. 11-477(RJL), 2012 WL 506729, *1 (D.D.C. Feb. 15, 2012) (citing Rep. of the D.C. Comm. on Public Safety and the Judiciary on Bill 18-893 (Nov. 19, 2010) ("Comm. Report") at 4). This is just such a suit.

The D.C. Anti-SLAPP Act intentionally follows "the lead of other jurisdictions, which have similarly extended absolute or qualified immunity to individuals engaged in protected actions." Comm. Rep. at 4. In order to extend such immunity, the Act allows defendants to file a motion to dismiss any claim "arising from an act in furtherance of the right of advocacy on issues of public interest." D.C. Code § 16-5502(a). The D.C. Anti-SLAPP Act

---

[9] The Supreme Court has defined "satire" as follows:

> Satire has been defined as a work "in which prevalent follies or vices are assailed with ridicule," 14 Oxford English Dictionary, [500 (2d ed. 1989], or are "attacked through irony, derision, or wit," American Heritage Dictionary [1604 (3d ed. 1992)].

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 581 n.15 (1994).

provides that "[i]f a party filing a special motion to dismiss under this section makes a prima facie showing that the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest, then the motion shall be granted unless the responding party demonstrates that the claim is likely to succeed on the merits." *Id*. § 16-5502(b).  Defendants have filed a motion to dismiss because Plaintiffs' claims are an attack on the Blog Post, an "act in furtherance of the right of advocacy on issues of public interest." *Id.*[10]

> The Act is broad; it applies to claims based on any written or oral statement made:
>
> (i)  In connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; or
>
> (ii)  In a place open to the public or a public forum in connection with an issue of public interest.

*Id.* § 16-5501(1)(A).  It applies to "[a]ny other expression or expressive conduct that involves petitioning the government or communicating views to members of the public in connection with an issue of public interest." *Id.* § 16-5501(1)(B).  An "issue of public interest" is one "related to health or safety; environmental, economic, or community well-being; the District government; a public figure; or a good, product, or service in the market place . . . [but] shall not be construed to

---

[10] Plaintiffs assert that the Anti-SLAPP Act is procedural and thus inapplicable here because federal courts must apply federal procedural laws. *See Erie v. Tompkins*, 304 U.S. 64 (1938) (federal courts sitting in diversity must apply state substantive laws and federal procedural laws); *see also 3M Co. v. Boulter*, Civil No. 11-1527(RLW), 2012 WL 386488 (D.D.C. Feb. 2, 2012) (finding Anti-SLAPP procedure inapplicable in federal court).  Other courts have disagreed. *See, e.g.*, *Godin v. Schencks*, 629 F.3d 79, 81 (1st Cir. 2010); *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164 (5th Cir. 2009); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999); *Sherrod v. Breitbart*, Civil No. 11-477(RJL), 2012 WL 506729, *1 (D.D.C. Feb. 15, 2012) (D.C. Anti-SLAPP Act "is substantive – or at the very least, has substantive consequences" and thus is applicable in federal court).  The Court finds this latter view persuasive.  It was certainly the intent of the D.C. Council and the effect of the law – dismissal on the merits – to have substantive consequences.

-11-

include private interests, such as statements directed primarily toward protecting the speaker's commercial interests rather than toward commenting on or sharing information about a matter of public significance." *Id.* § 16-5501(3).

Anti-SLAPP laws elsewhere have been applied to bar each of Plaintiffs' common law claims. *See, e.g., Gardner v. Martino,* 563 F.3d 981, 983 (9th Cir. 2009) (affirming dismissal of defamation, false light invasion of privacy, intentional interference with economic relations, and intentional interference with prospective economic advantage claims under Oregon's anti-SLAPP statute); *Mefford v. Cameron Park Cmty. Servs. Dist.*, Civil No. 2:09-cv-02992, 2010 WL 2816877 (E.D. Cal. July 16, 2010) (dismissing false light invasion of privacy and defamation under California's anti-SLAPP statute).

The Blog Post contained an expression of views that communicated to members of the public in connection with an issue of public interest, *i.e.*, the dispute over whether President Obama qualifies by birthright to be President of the United States. Having become such well-known proponents of one position on the issue, Plaintiffs cannot complain that the very intensity of their advocacy also became part of the public debate. Those who speak with loud voices cannot be surprised if they become part of the story.

Plaintiffs resist this conclusion by arguing first that the Blog Post did not focus on an issue of public concern. Rather, they contend, the substance underlying this lawsuit is Defendants' desire to harm Plaintiffs' reputations and commercial interests. They argue that the defamatory speech in the Blog Post concerned the business aspect of the Corsi Book, that is, statements that Plaintiffs planned to recall and pulp the entire 200,000-volume first run printing. They assert that the commentary regarding President Obama only lurks in the background to the

-12-

thrust of the Blog Post, and that the Blog Post was really an attack on Plaintiffs themselves and the Corsi Book.

Plaintiffs' analysis overlooks the content of the Corsi Book and Plaintiffs' energetic efforts to promote it. The Corsi Book advances Plaintiffs' argument that President Obama cannot satisfy a constitutional requirement and thus is ineligible to be president; this constitutes a statement on a matter of public interest. Commentary on the Corsi Book — its accuracy, its thesis, and its value — likewise constitutes a statement on a matter of public interest. The Blog Post focused specifically on the controversy stoked by Plaintiffs' claims and enhanced by publication of the Corsi Book, that the President may be foreign-born and thus barred from serving as president.

About an hour after esquire.com issued the Blog Post, Mr. Farah told the *Daily Caller* that the Blog Post was "a very poorly executed parody." Findikyan Decl., Ex. 28 (dailycaller.com post May 18, 2011 at 12:06 p.m.). In other words, Plaintiffs immediately recognized the satiric nature of the Blog Post. Mr. Farah also took to the radio airwaves immediately following the Blog Post to mock those who asked him for comment, saying, "are you guys serious? . . . You think I'm gonna pull a best-selling book off the shelves?" *Id*., Ex. 43 (WND.com post May 18, 2011 at 9:24 p.m.). Because later it became inconvenient to treat the Blog Post as satire cannot erase Plaintiffs' own contemporaneous admission that it was so intended. Political satire can be, and often is, uncomfortable to its targets, but that does not render it any less satiric or any less an expression on a topic of public concern. The controversy surrounding President Obama's birthplace reached such a crescendo prior to the release of his long-form birth certificate that it was dubbed the Birther Movement. That Movement had, and

-13-

apparently continues to have, some committed proponents. Plaintiffs themselves played leadership roles in the Birther Movement, contributing hundreds of articles questioning the legitimacy of the Obama Presidency and enthusiastically advertising the Corsi Book.

The Blog Post itself bore indicia of its satiric nature. The page was tagged as "humor." Findikyan Decl., Ex. 27 (esquire.com Politics Blog post May 18, 2011 at 10:50 a.m.). The Blog Post started with an exaggerated headline announcing in bold print "Breaking: Jerome Corsi's Birther Book Pulled From Shelves!" *Id*. Real news does not usually contain an exclamation point and would not be reported on an opinion page. Further, the headline was accompanied by a logo of a siren, a symbol used by conservative Matt Drudge when commenting on current news to his readers. *Id*. The text asserted that Messrs. Corsi and Farah announced "plans to recall and pulp the entire 200,000 first printing run of the book" *Id*. The reference to a first run printing of "200,000 books" is an exaggerated number for a first printing. Also, the Blog Post refers to a fake book, alleged to be authored by Mr. Farah, called "Capricorn One: NASA, JFK, and the Great 'Moon Landing' Cover-Up." *Id*. The book title alludes to "Capricorn One," a 1978 movie starring O.J. Simpson and others about a government Mars landing hoax. Finally, the Blog Post includes absurd quotes, such as Mr. Farah's alleged statement about his own Birther Movement views that "bullshit is bullshit." *Id*. These clues reveal that the Blog Post was satire; Mr. Farah immediately recognized that it was.

This suit fits entirely within the scope of § 16-5501(1)(A) of the D.C. Anti-SLAPP Act, as it concerns a "written or oral statement" made in a "place open to the public or a public forum in connection with an issue of public interest." D.C. Code § 16-5501(1)(A). This suit also comes within § 16-5501(1)(B), as the Defendants' speech was "expression" involving

-14-

"communicating views to members of the public in connection with an issue of public interest." *Id.* § 16-5501(1)(B). Because this suit arises from Defendants' speech on matters of public interest, the suit must be dismissed under the D.C. Anti-SLAPP Act.

Plaintiffs contend that the Blog Post was an attack on Plaintiffs' commercial interests and thus that the speech falls within the commercial speech exception in the Act. Plaintiffs assert that WorldNetDaily.com is a commercial competitor to Hearst Communications, that Defendants' statements were directed toward injuring Plaintiffs' commercial interests, and thus that the Act does not apply.[11] The text of the Blog Post belies this assertion. The target of the Blog Post's satiric commentary was the Corsi Book,[12] and Mr. Farah (as publisher) and Dr. Corsi (as author) were named in connection to the Corsi Book. There can be no doubt that the Corsi Book was a topic of public interest. It continued the argument that the President is not a natural-born American and is unqualified for office. *See* Findikyan Decl., Ex. 26 (WND.com post May 17, 2011) ("The book . . . proves Obama's ineligible."). In response, the Blog Post first mentioned the Corsi Book explicitly and then poked fun at it, suggesting that Mr. Farah had announced plans "to recall and pulp the entire 200,000 first printing run of the book, as well as announcing an offer to refund the purchase price . . . ." *Id.*, Ex. 27 (esquire.com post May 18,

---

[11] Having continually thrust itself into the public limelight in the debate over the President's credentials, it would not be unreasonable to conclude that the credentials of Plaintiffs may be part of the story. The Court does not decide this point as it is unnecessary to this Opinion.

[12] Plaintiffs concede that the relevant aspect of WND at issue here is the Corsi Book, as they aver that the focus of the Blog Post was "the commercial aspect" of Plaintiffs' book, "that the books were being recalled (specifically 200,000 first run prints), that the author and publisher were refunding the purchase price to all buyers of the book, and that bookstores were pulling the books from their shelves." Opp. at 2.

2011 at 10:50 a.m.).  The commercial speech exception in the Act applies to speech that is "directed primarily toward protecting the speaker's commercial interests rather than toward commenting on or sharing information about a matter of public significance."  D.C. Code § 16-5501(3).  The Blog Post cannot be construed as speech directed toward protecting Defendants' commercial interests.  It was satirical comment on an issue of public concern.  Because Defendants have made a prima facie showing that the common law claims at issue here arose from speech in furtherance of the right of advocacy on issues of public interest and because Plaintiffs have failed to demonstrate that their claims are likely to succeed on the merits, Defendants motion to dismiss under the D.C. Anti-SLAPP will be granted.

### B. Failure to State a Claim

The rationale that applies to the motion to dismiss under the D.C. Anti-SLAPP Act also applies to Defendants' motion to dismiss for due to failure to state a claim.  Because Defendants' speech is protected by the First Amendment, Plaintiffs cannot pursue their common law claims based on such speech.

Plaintiffs assert a claim for defamation.  A defendant, however, may escape liability for defamation if the speech is protected under the First Amendment.  *See White v. Fraternal Order of Police*, 909 F.2d 512, 523 (D.C. Cir. 1990). "[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection."  *Connick v. Myers*, 461 U.S. 138, 145 (1983) (internal quotation marks omitted). Further, the First Amendment protects satire.  *See, e.g., Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 53 (1988) (a claim of intentional infliction of emotional distress based on the publication of a parody was barred by the First Amendment).  As explained above, the Blog Post

-16-

was satire on a matter of public concern. Such speech is protected by the First Amendment and cannot be the basis of a defamation claim.

The same constitutional limitations apply to the claims of false light invasion of privacy as to a claim for defamation. *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 628 (D.C. Cir. 2001); *Lane v. Random House, Inc.*, 985 F. Supp. 141, 148 (D.D.C. 1995). Similarly, the First Amendment provides a privilege against a misappropriation invasion of privacy claim, permitting "the use of a plaintiff's name or likeness when that use is made in the context of, and reasonably relates to, a publication concerning a matter that is newsworthy or of legitimate public concern." *Raymen v. United Senior Ass'n, Inc.*, 409 F. Supp. 2d 15, 22-23 (D.D.C. 2006). Likewise, the Plaintiffs' claim for tortious interference fails because it is grounded in the same nonactionable claim for defamation. *See Zandford v. Nat'l Ass'n of Sec. Dealers*, 19 F. Supp. 2d 1, 3-4 (D.D.C. 1998) (where the court found no prima facie showing of defamation, there could be no showing that such alleged defamation interfered with business relationships); *see also Christakis v. Mark Burnett Productions*, Civil No. 08-6864, 2009 WL 1248947, *5 (C.D. Cal. Apr. 27, 2009) (First Amendment limitations "apply to all claims whose gravamen is the alleged injurious falsehood.").

All of Plaintiffs' common law claims are based on the same underlying allegations regarding the Blog Post. Because the Blog Post is satire on a matter of public interest that is protected by the First Amendment, Plaintiffs' common law claims of defamation (Count I), false light invasion of privacy (Count II), tortious interference with business relations (Count III), and misappropriation invasion of privacy (Count V) will be dismissed.

### C. Lanham Act

Count IV of the Complaint alleges a violation of the Lanham Act, which provides in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Plaintiffs assert that:

Defendants . . . caused confusion, mistake and deception through their publication of false and misleading information and description of fact which include but are not limited to the accuracy, motives, nature, characteristics, and qualities of the subject book, on their Internet advertising and reporting sites . . . .

Compl. ¶ 32. Plaintiffs base this claim on allegations that Plaintiffs and Defendants are commercial competitors, *id*. ¶ 31; the Blog Post caused public confusion as to the accuracy of the Corsi Book, *id.* ¶ 32; it attributed false statements to Plaintiffs, *id.* ¶ 12; and it damaged Plaintiffs' reputation, credibility, and anticipated success. *Id.*

Every circuit that has addressed the issue has found that the Lanham Act restricts

-18-

only commercial speech, as commercial speech is entitled to reduced protection under the First Amendment. *See Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1322-23 (11th Cir. 2010); *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1051-52 (10th Cir. 2008); *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005); *Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.*, 332 F.3d 6, 19 (1st Cir. 2003); *Boule v. Hutton*, 328 F.3d 84, 90 (2d Cir. 2003); *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003); *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803 (7th Cir. 2001); *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1120 (8th Cir. 1999); *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996).[13]

While the First Amendment does not protect a competitor who labels his commercial good with a confusingly similar mark, such "trademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view." *Bosley*, 403 F.3d at 677. Here, Defendants referred to the Corsi Book in the Blog Post, which was satirical speech on a matter of public interest and not commercial speech. The Blog Post contained an expression of views regarding the dispute over whether President Obama qualifies by birthright to be President of the United States. Because the expression cannot be characterized as commercial speech, the Lanham Act does not apply and Count IV will be dismissed.

### IV.  CONCLUSION

Accordingly, Defendants' motion to dismiss [Dkt. 4] will be granted, and the

---

[13] The D.C. Circuirt and the Fourth Circuit  have not addressed the issue. *See Lamparello v. Falwell*, 420 F.3d 309 (4th Cir. 2005) (declining to resolve the question because the claims asserted failed on their merits).

Complaint will be dismissed. A memorializing Order accompanies this Memorandum Opinion.


Date: June 4, 2012                                    _____/s/_____
                                                      ROSEMARY M. COLLYER
                                                      United States District Judge